JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
D. Maimon Kirschenbaum
Denise Schulman
Josef Nussbaum
Lucas C. Buzzard

32 Broadway, Suite 601
New York, NY 10004
Phone (212) 688-5640
Fax (212) 688-2548
www.jk-llp.com

**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/10/2018

November 19, 2019

**VIA ECF**

Hon. Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Smith v. Host RG 54, et al.*
No.: 18-cv-3331

> The Court declines to approve the proposed settlement as fair and reasonable at this time. The Court finds that the general release, contained in paragraph 3 of the proposed settlement, is overly broad and should instead be limited to a release of the FLSA and NYLL claims in Plaintiffs' Complaint. Parties are directed to either submit a revised settlement agreement consistent with this Order by **December 21, 2018** or appear for a status conference on **December 28, 2018 at 10:00 A.M**.
>
> SO ORDERED.       Date: 12/10/2018
>
> */s/ Valerie Caproni*
>
> HON. VALERIE CAPRONI
> UNITED STATES DISTRICT JUDGE

Dear Judge Caproni:

    We represent Plaintiffs Frank Smith and Gregory White in the above-referenced matter. I write to respectfully request that the Court approve the parties' settlement of this Fair Labor Standards Act ("FLSA") case as fair and reasonable and so order the parties' stipulation of dismissal with prejudice. The parties' executed settlement agreement is submitted herewith as Exhibit 1, and the executed stipulation of dismissal is attached as Exhibit A to the settlement agreement.

    Plaintiffs are former bartenders at Defendants' restaurant, Bills Townhouse. The Complaint in this case alleges claims of unpaid wages and retaliation under the FLSA and New York Labor Law ("NYLL"). Plaintiffs assert claims of unpaid minimum wage and overtime under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). They also assert claims under the NYLL of failure to provide proper wage notices and wage statements as required by N.Y. Lab. Law § 195(1) and (3). Finally, they allege claims of retaliatory termination following their good faith complaints of wage violations pursuant to the FLSA and the NYLL. In late October 2017, following a court annexed mediation, the parties agreed to settle this case for a total of $35,000. Of the total $35,000 payout, $25,000.00 is allocated to Plaintiffs, and the remaining amount ($10,000.00) is going to counsel as attorneys' fees and for reimbursement of costs.

    The settlement is fair and reasonable and should be approved. *See generally Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015). As can be seen from the damages calculation attached hereto as Exhibit 2, approximately 68% of Plaintiffs' maximum available damages stem from their retaliation claims. It is as to those claims that Plaintiffs faced their most serious risks. Plaintiffs' retaliation claim stemmed from a January 2017 email they sent to Defendants in which they complained about their tips and the manner of tip distribution. Plaintiff White was terminated approximately ten days after this email was sent and Plaintiff Smith's hours were reduced. While the timing of these adverse actions would likely be sufficient

to establish the inference of a causal connection between Plaintiffs' complaint and the adverse actions, other documentary evidence demonstrated that Plaintiffs faced significant hurdles to proving their retaliation claims.

Specifically, in connection with the court-annexed mediation, Defendants produced substantial documentary evidence detailing warnings and disciplinary actions taken against Plaintiffs both before and after the January 2017 email was sent. Thus, even if Plaintiffs could establish a *prima facie* FLSA retaliation claim, under the burden-shifting analysis applicable to FLSA retaliation claims, this evidence satisfies Defendants' burden of articulating a legitimate reason for the adverse actions against Plaintiffs. *See generally Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (discussing the FLSA's burden-shifting approach). To withstand summary judgment on their retaliation claims, therefore, Plaintiffs would be required to engage in lengthy discovery involving depositions of all restaurant personnel involved in the adverse actions in the hopes of uncovering some other reason for those actions that would establish a dispute of fact as to whether Defendants' disciplinary-based explanation was pretextual.

In light of these risks, the ultimate settlement amount is reasonable. As may be seen from the damages calculation attached as Exhibit 2, Plaintiffs' total compensatory damages for lost wages stemming from the substantive FLSA/NYLL violations amount to $3,790 ($1,878 for White and $1,911 for Smith). Under the settlement agreement, each Plaintiff will receive a total of $12,500.00, with approximately $5,625.00 of that amount (45%) designated as wages. *See* Ex. 1 ¶ 2 & Addendum. Thus, each Plaintiff will receive approximately $4,000 more in compensatory wage damages than their maximum possible recovery on their substantive FLSA/NYLL unpaid wage claims. Given their weekly earnings, this equals approximately one month of back pay for each Plaintiff on the retaliation claims. Further, the amount of each Plaintiff's settlement amount designated as non-wage damages (55% or approximately $6,875), fully compensates Plaintiffs for their liquidated damages on the substantive FLSA/NYLL unpaid wage claims. *See* Ex. 2. In light of the risks outlined above, this is a reasonable compromise because it will allow Plaintiffs to recover a significant portion of the damages they allege they are owed while avoiding the uncertainties of trial, where a ruling in Defendants' favor on the retaliation claims would limit Plaintiffs' combined maximum damages under both the FLSA and NYLL to only $27,581.24 (total wage damages plus penalties for violations of N.Y. Lab. Law § 195).

Further, the settlement was the product of extensive arms-length negotiations between the parties conducted with the benefits of a court-annexed mediator and the exchange of pre-mediation discovery. The settlement agreement itself does not contain any offensive confidentiality provisions. While there is a paragraph labeled "Confidentiality," it does not render the settlement agreement confidential or preclude Plaintiff's from actively discussing or disseminating the settlement terms and conditions (which will be publicly available on the Court's docket). Rather, it simply requires Plaintiffs to notify Defendants if they are subpoenaed to give testimony about Defendants and "if possible," give Defendants a reasonable opportunity to contest that subpoena. *See* Ex. 1 ¶ 6.

The agreement's non-disparagement provision is mutual, Ex. 1 ¶ 9, and does not preclude either party from making truthful statements. In addition, as further consideration for the mutual

non-disparagement provision, Defendants have agreed to provide Plaintiffs with neutral references. As such, the mutual non-disparagement provision should be approved. *See Velandia v. Serendipity 3, Inc.*, No. 16-cv-1799 (AJN), 2018 U.S. Dist. LEXIS 116594, at *11-12 (S.D.N.Y. July 12, 2018) (approving a mutual non-disparagement provision that expressly provided that "both parties can discuss the litigation")

Moreover, the agreement does not contain any impermissible releases. Plaintiffs have agreed to release Defendants from claims "relating to their employment with Defendants and regarding events that have occurred as of the effective date" of the settlement agreement. Ex. 1 ¶ 3. This "employment-related" release is sufficiently narrowly tailored in this action, where Plaintiffs are former employees of Defendants and have alleged both wage violations and the illegal termination of their employment. Specifically, the release provision does not impermissibly "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) (internal quotation marks omitted); *cf. Souza v. 65 St. Marks Bistro*, No. 15-cv-327 (JLC), 2015 U.S. Dist LEXIS 151144, at *18 (S.D.N.Y. Nov. 6, 2015) ("A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure.").

Finally, the settlement provides for reasonable attorneys' fees and costs to Plaintiffs' counsel. Under the settlement agreement, Plaintiffs' counsel will receive $10,000.00—less than one-third of the settlement amount as attorneys' fees and for reimbursement of costs. The proposed fee award should be approved because it is less than the amount agreed to by Plaintiffs and is consistent with fee arrangements routinely approved in FLSA settlements in this Circuit.

Under the Plaintiffs' contingency fee engagement agreement, Plaintiffs' counsel is entitled to request out of the total recovery one-third in attorneys' fees and the recovery of costs. The "percentage of the settlement amount" method for determining a reasonable fee is "appropriate and commonly applied in FLSA cases" in this Circuit. *Velasquez v. Digital Page, Inc.*, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016); *accord Fang Xiao v. Grand Sicuan Int'l St Marks, Inc.*, No. 14-cv-9063, 2016 U.S. Dist. LEXIS 99669, at *6–7 (S.D.N.Y. July 29, 2016) (applying the percentage of the fund method); *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (observing that "the trend in this Circuit is toward the percentage of the fund method"). Using this method, "attorneys' fee awards of one third or less of the total settlement amount are generally accepted in this District." *Cionca v. Interactive Realty, LLC*, No. 15-cv-5123, 2016 U.S. Dist. LEXIS 77372, at *5 (S.D.N.Y. June 10, 2016); *see also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (characterizing one-third as the "standard contingency-fee level[]" in FLSA case); *Zeng Xiang Hiang v. Ai Chu Chiang*, No. 16-cv-1129 (HBP), 2016 U.S. Dist. LEXIS 142670, at *7 (S.D.N.Y. Oct. 14, 2016) ("Contingency fees of one third in FLSA cases are routinely approved in this Circuit.") (citing cases); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 U.S. Dist. LEXIS 79757, at *5 (S.D.N.Y. June 20, 2016) (fee award of one-third of settlement "consistent with contingency fees that are commonly accepted in the Second Circuit in FLSA cases" (quotation omitted)). Here, Plaintiffs' counsel is seeking less in fees than that to which they are entitled under Plaintiffs' contingency fee agreement.

3

A "lodestar" crosscheck supports the reasonableness of the requested one-third fee amount in this case. As can be seen from counsel's contemporaneous records attached as Exhibit 3, counsel's lodestar amount totals $6,060.00.[1] This amount reflects a reasonable number of hours spent on this matter, which involved pre-mediation discovery and participation in a court-annexed mediation.[2] In addition, the requested one-third fee award amounts to a multiplier of only 1.65 of this lodestar amount. This amount is objectively reasonable, particularly in light of the efficient result counsel was able to obtain in an expedient manner. *See Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("[A] multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases). The lodestar amount also reflects reasonable hourly rates billed by Joseph & Kirschenbaum LLP's attorneys.[3]

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the parties' settlement, so order the stipulation of dismissal, and retain jurisdiction to enforce the terms of the settlement agreement. We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Lucas C. Buzzard*
Lucas C. Buzzard

cc: Defendants' counsel (via ECF).

---

[1] Counsel's time records have been edited to remove duplicate entries or purely clerical tasks.

[2] Counsel's lodestar includes the hours spent on this approval letter and fee application. *See J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03-cv-1548 (GBD) (AJP), 2008 U.S. Dist. LEXIS 82085, at *51 (S.D.N.Y. Oct. 17, 2008) (finding plaintiff was "entitled to legal fees for the preparation of its fee application").

[3] There is one biller identified in Plaintiff's time records: myself ("LCB" in time records). I received my J.D. from American University, Washington College of Law in 2010. Since that time, I worked as a law clerk in the Staff Attorney's Office of the United States Court of Appeals for the Second Circuit and then as a law clerk to the Hon. Peter W. Hall of the United States Court of Appeals for the Second Circuit before joining Joseph & Kirschenbaum LLP ("JK") as a senior associate in September 2015. I have been approved at my requested senior associate rate of $300 in the Eastern District, *Widijaja v. Kang Yue USA Corp.*, No. 09-cv-2089 (AMD) (CLP), 2016 U.S. Dist. LEXIS 34038, at *7-8 (E.D.N.Y. Mar. 16, 2016), which falls well within the rates approved for senior associates in this District, s*ee, e.g.*, *Blackwell v. Actor's Playhouse*, No. 14-cv-603 (FM), 2016 U.S. Dist. LEXIS 47984, at *26 (S.D.N.Y. Apr. 4, 2016) ("[J]udges in this District routinely award associates at firms specializing in FLSA claims $300 or less per hour.") (citing cases).